UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DEMARCUS MORAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 3:07-CV-171 |
| | ) | |
| BRAD ROGERS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment filed by the defendant, Brad Rogers ("Rogers" or "defendant") on February 18, 2008. Docket at 24. The plaintiff, Demarcus Moran ("Moran" or "plaintiff"), did not file a response to the motion, nor did he file a motion for extension of time in which to do so. In the absence of any request for additional time, Moran's response to the motion would have been due on or about March 25, 2008. Moran was served with a notice pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982), notifying him that the motion had been filed, informing him of his right to file a response in opposition to defendant's motion, and advising him of the provisions of Fed.R.Civ.P. 56. Docket at 26. Despite that notice, no responsive pleading of any sort was received from Moran. Consequently, the motion for summary judgment is ripe for resolution on the record as it stands.

**FACTUAL BACKGROUND**

Moran initiated this lawsuit by filing a *pro se* Complaint on April 10, 2007. Docket at 1. In his Complaint, Moran alleged an action for damages pursuant to 42 U.S.C. § 1983 against Rogers, who is a Captain with the Elkhart County (Indiana) Sheriff's Department and the warden at the Elkhart County Corrections Center (the "Jail"). Complaint, p. 2. Moran, who was a

pretrial detainee in the Jail at the time he filed the lawsuit, complained about the living conditions in the facility.  *Id*., pp. 3-4.  Specifically, he alleged that the Jail had mold growing on the walls, bugs in the shower area, and leaks in the walls.  *Id*.  Rogers was the only defendant named in the lawsuit.  *Id*., p. 1.  Moran claimed that these conditions caused inmates, including him, to break out with rashes and itches.  *Id*., pp. 3-4.  He also alleged that the Jail conditions caused him to experience breathing problems and heart "cramping."  *Id*.

When it was filed initially, the court reviewed Moran's Complaint pursuant to 28 U.S.C. § 1915A, which mandates that the federal courts shall review the merits of a civil action filed by a prisoner to determine which, if any, claims have merit.  After carefully reviewing the allegations in Moran's Complaint, the court issued an Order on April 24, 2007, permitting Moran to pursue a claim against Rogers, in his individual capacity, for damages Moran claimed to have sustained as a result of exposure to mold in the Elkhart County Jail.  Opinion and Order, Docket at 4.  In reaching that decision, the court explained as follows:

> Mr. Moran asserts that he is experiencing breathing problems and his heart has been cramping on him.  Serious breathing and heart problems are not mild allergic reactions to the mold.  While it may be difficult to prove with medical evidence that the mold caused Mr. Moran's health problems, giving Mr. Moran the reasonable inferences to which he is entitled at this stage of the proceeding, Mr. Moran has stated a claim against Brad Rogers in his individual capacity for compensatory damages.
>
> Mr. Moran also alleges that the walls leak and that there are leeches in the shower.  He does not allege, and based on [his] complaint it would not be reasonable to infer, that he was actually injured because of the leaking walls and the leeches.  Merely observing, but not being injured by, potentially dangerous conditions, does not state a claim.  *See Walker v. Peters*, 233 F.3d 494, 502 (7th Cir. 2000) ("Because he cannot show injury, he cannot make out a claim of deliberate indifference . . .").  As a result, these claims will be dismissed.

*Id*., p. 3.

According to the defendant,[1] "Moran has been housed in the Elkhart County Jail (the "Jail") on charges of burglary and robbery since he was first incarcerated on February 1, 2007. . . . His trial is set to take place on February 25, 2008." Designation of Material Facts and Memorandum of Law in Support of Motion for Summary Judgment of Defendant ("Defendant's Memorandum"), Docket at 25, p. 4. Rogers states that Moran's claims relate only to "the County's former Jail. . . . On November 16, 2007, Moran moved to the County's new Jail facility. . . . [Moran] has no mold complaints about the current facility." *Id*.

Rogers explains that Moran "was housed in two separate wards [in the Jail], Wards 1 and 5." *Id*. In his deposition testimony, Moran alleged that mold was present in both wards, including in the showers, the cells, and the day room. *Id*., p. 5. The Jail staff provided cleaning supplies and "Moran cleaned the floors and showers of Ward 1 every day that he was there." *Id*. Moran briefly met Rogers twice while he was incarcerated. *Id*. The first time, "Rogers was walking through the Jail when he met Moran; Rogers introduced himself and mentioned that he was the person that Moran was suing. . . . Moran responded, 'Oh, yeah.' . . . This was their entire conversation." *Id*. Moran also saw Rogers in the Jail's booking area at some point in October 2007 but did not speak with him on that occasion. *Id*.

---

[1] Much of the factual background of this case is taken from the factual recitation presented by the defendant in his memorandum. Defendant's recitation of the facts is replete with references to the record (such as Moran's own deposition testimony, the affidavit statements made by defense witnesses, and documentary evidence submitted by the defendant in support of his motion for summary judgment). Because Moran has not filed any response to the motion and therefore has not contested the facts as presented by Rogers, those facts are taken as undisputed. Therefore, for purposes of simplicity and efficiency, the court will not repeat the defendant's very detailed citations to the evidence except where doing so is relevant to an understanding of the court's ruling on the motion for summary judgment.

During his deposition testimony, "Moran alleges that he submitted a written grievance regarding mold in April 2007, approximately two weeks before he filed suit, by giving it to one of the Jail officers. . . . And although Moran indicated in Section II(B) of his Complaint that he had filed a grievance, and though he indicated in his deposition that he put a copy of his grievance in his lawsuit filings . . ., it does not appear that he has filed any grievance documentation with the Court." *Id.*[2]  Rogers presents the affidavit of Undersheriff Julie Dijkstra ("Dijkstra") in which she states that she "conducted a full search of Demarcus Moran's Jail records and do not find any indication that the Jail received a written grievance from him at any point in time." *Id.*, Exh. E, Affidavit of Julie Dijkstra, ¶ 6.  In any event, Moran conceded during his deposition that this was the only grievance form he submitted to the Jail. *Id.*, Exh. A, Deposition of Demarcus Moran, p. 27.

Regardless of what happened to that alleged grievance form, the record reflects that Moran was seen by medical personnel on numerous occasions while he was incarcerated in Elkhart County.  Defendant's Memorandum, pp. 6-11.  The medical records submitted by Rogers, as well as Moran's own deposition testimony, establish that Moran submitted numerous "Sick Call Request" forms (i.e., requests to be seen by a nurse or doctor for some reason) and that he was, in fact, seen by a medical professional each time he requested.  *Id.*; Exh. A, Deposition of Demarcus Moran, pp. 46-98; *see also*, Exh. D, Affidavit of Raquel Rivera, R.N.

---

[2] The court's review of the entire file in this case confirms that Moran did not submit a copy of his alleged grievance in any of his filings with the court.  However, even assuming that Moran did properly submit a grievance to the Jail regarding his health concerns, those concerns were addressed when Moran was seen by medical personnel on many occasions, as set forth below.  Therefore, the absence of a copy of Moran's alleged grievance from the record in this case is not material.

and attachments thereto.  The affidavit of Ms. Rivera states that she is a registered nurse "employed by Advanced Correctional Healthcare ("ACH"), which provides medical services to the Elkhart County Jail. . . ."  Exh. D, ¶ 2.  Rivera states that attached to her affidavit are the "true and correct excerpted copies of the medical records relating to Demarcus Moran . . . while he was incarcerated at the Jail."[3]  *Id*., ¶ 4.  Rivera, as part of her affidavit, used Moran's medical records to compile a time line setting out Moran's visits with nurses and doctors "from the beginning of his incarceration at the Jail to the [date of the affidavit]."  *Id*., ¶ 5a. - s.  This time line reveals that Moran was seen by a nurse or doctor at least 14 times between June 14, 2007, and January 16, 2008.  *Id*.  Many of those medical visits related to his complaints of difficulty breathing and chest pain or discomfort.  *Id*.  On several occasions, a nurse or physician concluded that Moran's health problems were related to excessive or over-strenuous exercise and he was given Tylenol.  *Id*.  In his deposition, Moran testified that his chest pain occurred when he worked out, moved quickly, ran around or ran laps.  Exh. A, Deposition of Demarcus Moran, pp. 37-39.  During a few of his medical visits, Moran was assessed for any cardiac problems or abnormalities but none were found.  Exh. D, ¶ 5a., 5c., 5q.  Moran testified during his deposition that the reason he believed his health problems were related to the presence of mold in the Jail was that he had never experienced such a problem until he was incarcerated.  Exh. A, p. 40.  Moran also testified that no medical professional–doctor, nurse or other–ever told him that his chest pain was related to exposure to mold.  *Id*., p. 41.  Moran did state, on the other hand, that two nurses told him that his breathing difficulties could have been related to mold exposure, so

---

[3] The unredacted versions of Moran's medical records were submitted under seal. Docket at 27.

he took to sleeping on a bottom bunk in his cell, which was apparently not as close to the areas where mold was present.  *Id*.  However, Moran conceded that even though he expressed concern about the presence of mold, no other doctor or nurse ever told him that exposure to mold was the cause of his breathing problems.  *Id*. Finally, and importantly, Moran testified that Rogers never prevented him from seeing medical personnel or seeking medical attention while at the Jail.  *Id*., p. 28.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  *See id.* at 255.  However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), will defeat a motion for summary judgment.  *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes.  *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994).

Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated.  *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003).  A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  *Celotex,* 477 U.S. at 325.  A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.  *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

In addition to this standard of review for motions for summary judgment, the court also must be mindful of the fact that Moran is proceeding *pro se*.  The standard employed by the courts when examining *pro se* pleadings was explained recently in *Fields v. Roswarski*, 2008 WL 150657 *1 (N.D. Ind., January 11, 2008):

> When reviewing *pro se* complaints, a court must employ standards less stringent than if the complaint had been drafted by counsel.  *Haines v. Kerner,* 404 U.S. 519 (1972).  A court must accept the well-pleaded factual allegations as true, and "construe such allegations in favor of the plaintiff." *Roots Partnership v.. Lands'*

7

> *End, Inc.,* 965 F.2d 1411, 1416 (7th Cir. 1992). Although ambiguities in the complaint should be interpreted in the plaintiff's favor, *Canedy v. Boardman,* 16 F.3d 183, 188 (7th Cir. 1994), a court need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint, *Coates v. Illinois State Bd. of Educ.,* 559 F.2d 445, 447 (7th Cir. 1977), or ignore factual allegations set forth in the complaint that undermine the plaintiff's claim. *City Nat'l Bank of Florida v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir. 1994).

Accordingly, plaintiff's claim, and defendant's motion for summary judgment on that claim, must be considered in light of these standards.

## DISCUSSION

As stated, Moran was a pretrial detainee at the Elkhart County Jail at the time he filed his Complaint. Though the Eighth Amendment's proscription against cruel and unusual punishments applies only to persons convicted of crimes and though the rights of pretrial detainees are derived from the Fourteenth Amendment's Due Process Clause, "the recognized standard of protection afforded to both convicted prisoners and pretrial detainees under the Eighth and Fourteenth Amendments" is the same. *Palmer v. Marion County*, 327 F.3d 588, 593 (7th Cir. 2003). A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Eighth Amendment requires that prison official ensure that inmates receive adequate food, clothing and shelter. *Id*. at 832. But conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-109 (7th Cir.

8

1971).  As this court stated in its Order issued on April 24, 2007, "[s]erious breathing problems and heart problems are not mild allergic reactions to [exposure to] mold."  For that reason, the court allowed this case to move forward on Moran's claim that mold in the Jail caused him serious health problems.  However, now that the record has been more fully developed, albeit without any response from Moran to the motion for summary judgment, the evidence establishes that Rogers did not display any indifference to Moran's condition, let alone deliberate indifference.  As stated above, Moran even conceded in his deposition that Rogers never did anything to impede Moran from getting medical attention while he was incarcerated. Defendant's Memorandum, Exh. A, Deposition of Demarcus Moran, p. 28.  Furthermore, the record reveals that Moran was seen repeatedly by nurses and doctors when he complained about breathing problems or chest pain.  He was examined several times, given Tylenol and Tums, and told to drink more water and refrain from overly vigorous exercise.  The medical personnel who examined Moran never found any evidence of a heart condition and were never able to conclude that Moran's breathing problems were related to his exposure to mold (with the exception of the two nurses who allegedly told him that his condition *could be* the result of such exposure).  The Jail even provided Moran with cleaning supplies so he could clean areas in the Jail where mold was present.

     In an ideal world, prisoners and pretrial detainees would not be exposed to mold in jail.  But even assuming Moran's complaints on that count are true, the undisputed evidence demonstrates that Rogers and the Jail staff accommodated Moran by providing him with the cleaning supplies he requested and by providing him with medical attention whenever he asked for it.  Consequently, Moran fails to establish, either objectively or subjectively, that Rogers was

9

deliberately indifferent to an excessive risk to Moran's health or safety while he was incarcerated in the Jail. For these reasons, Rogers is entitled to summary judgment in his favor on Moran's claim.

## CONCLUSION

For the reasons discussed herein, the Motion for Summary Judgment filed by the defendant, Brad Rogers, is GRANTED. The Clerk of the Court is instructed to enter judgment in favor of the defendant, Brad Rogers, and against the plaintiff, Demarcus Moran.[4]

Date: May 15, 2008.

    /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana

---

[4] Moran must continue to pay installments on the filing fee in this case until the fee is paid in full, as set forth in this court's Order of April 12, 2007, wherein the court permitted Moran to proceed *in forma pauperis* in this suit. Docket at 3.